[No. 9271.  In Bank. — March 20, 1888.]

WILLIAM LEVISTON, APPELLANT, *v.* WILLIAM RYAN ET AL., RESPONDENTS.

| | |
|---|---|
| 75 | 293 |
| 77 | 70 |
| 75 | 293 |
| 78 | 381 |
| 75 | 293 |
| 82 | 643 |
| 75 | 293 |
| 83 | 510 |
| 84 | 105 |
| 75 | 293 |
| 92 | 158 |
| 75 | 293 |
| 140 | 279 |
| 75 | 293 |
| 143 | 688 |
| 75 | 293 |
| 147 | 57 |

NECESSITY OF FINDINGS — NO EVIDENCE INTRODUCED. — The trial court must make findings on every material issue.  It is not sufficient to say that it is impossible to make the finding.  If no sufficient evidence be introduced the finding should be against the party upon whom was the burden of proof.

PATENT — PUBLIC LAND — BURDEN OF PROOF. — A patent for public land, not void upon its face, is *prima facie* valid; and the burden of showing its invalidity is on the party attacking it.

ID. — PRE-EMPTION — INCORPORATED CITY. — The prohibition against pre-emption of lands in an incorporated city does not prevent their acquisition in other modes.

ID. — AGRICULTURAL COLLEGE GRANT — LANDS SUBJECT TO SELECTION. — The act of 1872 allows the selection to be made from any lands within the state which are subject to settlement, entry, sale, or location under any laws of the United States, with certain specified exceptions.  And in order to attack a patent not void upon its face, the party must show affirmatively that the land was not of any special character which would subject it to acquisition under any law of the United States.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion.

*William & George Leviston,* for Appellant.

*Tobin & Tobin,* and *Thomas F. Barry,* for Respondents.

HAYNE, C.—Ejectment. The plaintiff claims through a patent from the state of California, issued under the act of 1862, and amendatory acts in relation to agricultural colleges. The defense is, that the patent is void. The court below gave judgment for the defendant, and the plaintiff appeals. Two points are made by the defendant in support of the judgment.

1. It is said that the tract in controversy is part of the four leagues confirmed to the city and county of San Francisco as successor of the pueblo. If this were true there could be no doubt but that the plaintiff's patent is void. But there is nothing in the findings or the evidence to show that it is true. The finding is, that " it is impossible to determine whether or not the lands in controversy are within the limits of the lands so confirmed to the city and county of San Francisco."

It may be remarked in this connection that we see nothing impossible in the determination of the question. There is no question of fact which is material to the decision of a cause—that is to say, which the law requires to be decided—which cannot be settled by proof or presumption. The machinery of a court must be supposed to be equal to any demand which the law permits to be made upon it. The law does not require impossibilities. In the present instance the description in the decree of confirmation is clear, and it was a mere question of applying it to the ground. If sufficient evidence to satisfy the mind of the court was not produced by the parties, it should have found the fact against the party on whom was the burden of proof (*Speegle* v. *Léese,* 51 Cal. 415), and the burden in this case was upon the defendant. It was not required to make an *official* survey, but simply to decide, as between the parties before it, whether the tract in controversy was within the description contained in the decree of confirmation.

The facts which the court did find showed a valid patent; and this being the case, the supposed impossibil-

ity of finding further facts showing it to be invalid was no reason for holding it to be so. In the absence of a showing that the land was part of the four leagues, we must conclude that the patent is valid unless there be some other ground upon which it can be attacked.

2. The defendant contends that such other ground is furnished by the fact that the land was at the date of the selection within the limits of an incorporated city. It is alleged in the complaint, and not denied by the answer, that the land "is situate in the city and county of San Francisco." This averment of course speaks only from the time of the commencement of the action. But we know as a matter of law that the act establishing the corporate limits has not been changed since the date of the selection, and the land has certainly not moved since then. So that it must be taken as an established fact that the land was within the limits of the city and county of San Francisco at the date of its selection. This does not necessarily mean that it was a part of the four leagues. It is well known that the corporate limits extend somewhat beyond the four leagues. So that the tract might be "in the city and county of San Francisco" without being a part of the four leagues. And the respondent's argument upon this point is based upon the assumption that such is the case.

The argument is, that the statute of the United States provides that "lands included within the limits of any incorporated town, or selected as the site of a city or town," shall not be subject to pre-emption. (Rev. Stats., sec. 2258, reproduced from act of 1841.) But pre-emption is not the only mode in which public lands may be acquired. For example, the prohibition against pre-emption of lands within the limits of a city or town does not prevent the issuance of a patent for public mineral land within such limits. (*Steel* v. *Smelting Works*, 106 U. S. 447.) And upon the same principle we suppose that, if the land be public land, the prohibition against

pre-emption does not prevent its acquisition in any other mode that may be applicable (see *Doll* v. *Meader*, 16 Cal. 322), unless the acts under which the proceedings were had contain something to the contrary.

It is obvious, therefore, that it is necessary to examine the acts under which the proceedings were had.

The original act was passed on July 2, 1862. It provided that "there be granted" to the several states a certain quantity of land for the purpose of providing colleges for the benefit of agriculture and the mechanic arts. The provision in relation to the lands to be selected as part of the grant was as follows: "Whenever there are public lands in a state subject to sale at private entry at $1.25 per acre, the quantity to which said state shall be entitled *shall be selected from such lands* within the limits of such state." (12 U. S. Stats., p. 503, sec. 2.) This act also contained a proviso that "no mineral lands shall be selected or purchased under the provisions of this act."

On June 8, 1868, an amendatory act was passed whereby it was provided that the selection could be made "from any lands within said state *subject to pre-emption and sale*," with the same proviso as to mineral lands, and a further proviso excepting lands already subject to rightful claims. (15 U. S. Stats., p. 68, sec. 4.)

On March 3, 1871, another amendatory act was passed, whereby it was provided that the selection could be made "from any lands within said state subject to pre-emption settlement, entry, sale, *or* location *under any laws* of the United States," with the same proviso as to mineral lands and lands subject to rightful claims. (16 U. S. Stats., p. 581.)

The selection was in 1872, and was therefore under the last-mentioned act. It is obvious that its provisions on the subject are different from those of the prior acts. As we construe it, the selection is not confined to lands which are subject to pre-emption, but may be made from

public lands which are subject to acquisition in any mode, except mineral lands and lands subject to rightful claims,—or, in the language of the statute, from any land which is subject to "settlement, entry, sale, or location under any laws of the United States," with the exceptions mentioned. The language of the statute being express that the selection may be made·from public lands subject to acquisition *in any mode* (with specified exceptions), we do not see how it can be construed to mean that the selection must be made from land subject to acquisition in one particular mode.

This being the proper construction of the statute, it is not sufficient for the respondent to show that the land was not subject to pre-emption. He must go further, and show that the land was not subject to acquisition as public land in any mode. In other words, he must show that the land was not of such character as to bring it within any law of the United States providing for the acquisition of public land. To apply this principle, he must show that the land was not of any special character which would subject it to acquisition under any law of the United States.

The court cannot take judicial notice of the character of the land. In all the cases which we have seen in which patents have been held to be invalid, the defendant has proved by evidence the facts showing such invalidity. Whether a patent is conclusive or not, it is at least *prima facia* valid; and if a defendant in ejectment can attack it at all, the burden is on him to show the invalidity. (*Minter* v. *Crommelin*, 18 How. 88; *Collins* v. *Bartlett*, 44 Cal. 381.) The findings in this case set out the patent in full, and do not show that the land was of such a character as not to be subject to selection. They therefore do not support the judgment.

The question, therefore, as to the conclusiveness of the patent, which is the main one argued, does not arise upon the record. We do not suppose it probable that

the land was of such a special character as to bring it within any special mode of acquisition. And if the parties can stipulate that such is the fact, and agree to resubmit the cause, we suppose it would be proper (following the precedent of *Soto* v. *Kroder*, 19 Cal. 94, 95) to take up the case again and determine what seems to be the main question involved,—the controversy being undoubtedly genuine. In the present condition of the record, however, the judgment cannot stand.

We therefore advise that the judgment be reversed, and the cause remanded for a new trial, with leave to the parties to file a stipulation and proceed as above mentioned.

BELCHER, C. C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment is reversed, and the cause remanded for a new trial, with leave to the parties to file a stipulation and proceed as above mentioned.